437 A.2d 1265

**John C. CHAKLOS, Jr., Appellant,**

v.

**Rebetta R. CHAKLOS.**

Superior Court of Pennsylvania.

Argued Oct. 13, 1981.

Filed Dec. 11, 1981.

Chris F. Gillotti, Pittsburgh, for appellant.

Robert Raphael, Pittsburgh, for appellee.

Before HESTER, JOHNSON and MONTEMURO, JJ.

PER CURIAM:

Presently before the court is appellant's appeal from the Order of the lower court dated October 16, 1980, wherein general custody of the two minor children was awarded to appellee-mother, while specific visitation rights were awarded to appellant-father.[1] Following the denial of appellant's petition for reconsideration, this appeal followed.

We affirm.

The instant custody proceeding was initiated by appellant's filing of a Petition for Writ of Habeas Corpus. The hearing in this matter spanned three full days, July 10, July 17, and July 18, 1980 during which proceeding, 15 witnesses, including an in-camera interview with the two minor children, were heard. In addition thereto, pursuant to court order, a court-appointed psychologist met and interviewed all four persons (appellant-father, appellee-mother, and the two minor children) on June 13, 1980. That psychologist,

---

1. The Order appealed from in its entirety provides:

NOW, this 16th day of October, 1980, IT IS ORDERED AND DECREED THAT:

1. Primary custody of James M. Chaklos, born July 18, 1973, and Debra M. Chaklos, born November 4, 1974 is granted to Rebetta R. Chaklos, mother.

2. Visitation custody of said children is granted to John C. Chaklos, father, from 5:00 P.M. on October 24, 1980 until 6:30 P.M. on October 26, 1980, and alternating weekends thereafter.

3. In even-numbered years father shall have visitation custody with the children from 5:00 P.M. on the first full day of school Christmas vacation until 6:00 P.M. on December 26th and in odd-numbered years from 5:00 P.M. on December 26th until 6:00 P.M. on December 31st.

4. The summer school vacation shall be divided equally between mother and father according to the summer vacation schedule adopted by the Chambersburg Area School District. If the parties with the assistance of their counsel are unable to amicably agree upon dates for such visitation, the Court will on application of either party enter an appropriate order.

5. The Court specifically approves of such additional visitation custody for father as the parties may agree upon.

6. Father shall pick up the children at and return them to the home of mother or arrange for necessary transportation as heretofore has been done by the parties.

Exceptions are granted both parties.

James W. Nutter, Ed.D., filed a report including his recommendations concerning general custody; Dr. Nutter also personally testified.

The parties hereto were married on May 1, 1971 and divorced on December 28, 1979. The two minor children who are the subject of this custody proceeding were born of the marriage: James M. Chaklos, on July 18, 1973; and Debra Lynn Chaklos, on November 4, 1974. Following marriage, the parties initially resided in an apartment in Wilkinsburg, Pennsylvania until June of 1975. At that approximate time, appellant graduated from Dental School and accepted employment with Lehman Associates in Chambersburg, Pennsylvania. The parties moved to Chambersburg where they bought a townhouse at 743 Cumberland Avenue. Due to the fact that appellant had to retake a portion of his Dental Boards, he did not commence his employment with Lehman Associates with offices in Chambersburg and McConnellsburg, until September of 1975 (between June and September, appellant completed a one-month active tour of duty with the Army Reserves in the State of Texas). Following his one-year employment with Lehman Associates, appellant opened his own dental practice in Adams County, Pennsylvania and commuted thereto from the parties' home in Chambersburg. It was at this time that the relationship between the parties deteriorated dramatically, culminating in a violent argument in the early morning hours of November 8, 1978, which caused appellee to flee the next day to her parents' home at Ridgeway, Elk County, Pennsylvania, with their two children. After both parties engaged counsel, the parties entered into a Stipulation on December 8, 1978 granting general custody of the children to the appellee and awarding partial custody on alternate weekends to the appellant. In the interim, (January of 1979) appellant moved to the Pittsburgh, Pennsylvania area. Appellee finally moved back to the parties' marital residence with the children in December of 1979.

During that one year period (December, 1978 through December, 1979) appellant exercised his alternating weekend partial custody rights "8 or 9 times".

During December of 1979, appellant instituted a custody action in Allegheny County during the time the children were visiting with him over the Christmas Holidays. Following a hearing, an Allegheny County Common Pleas Judge directed that the children be returned to the appellee pursuant to the earlier Elk County Custody Order pending a jurisdictional hearing.

On either the second or third weekend of January of 1980, at the end of a weekend visit, appellant refused to return the children to the appellee. Instead, he enrolled James in first grade and Debra in Kindergarten in the South Fayette School District on January 28, 1980. The children were subsequently returned to appellee following a scheduled hearing.

The instant action was instituted by appellant's filing of a Petition for Writ of Habeas Corpus on June 9, 1980. The court issued the Writ commanding the appellee to bring the parties' two minor children to the Chambersburg Courthouse on July 10, 1980 for a custody hearing. As previously noted, the hearing lasted three full days (July 10, 17 and 18, 1980).

As this court in *Lewis v. Lewis*, 267 Pa.Super. 235, 406 A.2d 781 at 783–4 (1979) so aptly stated:

It is settled that the paramount concern in a child custody proceeding is to determine what is in the best interests of the child. *Commonwealth ex rel. Parikh v. Parikh* 449 Pa. 105, 296 A.2d 625 (1972); *Sipe v. Shaffer,* 263 Pa.Super. 27, 396 A.2d 1359 (1979). In a contest between parents, each party bears the burden of proving that an award to that party would be in the best interests of the child. *In re Custody of Hernandez,* 249 Pa.Super. 274, 376 A.2d 648 (1977). The award must be based on the facts of record and not on mere presumptions; in particular, the tender years presumption is no longer recognized, *Sipe v. Shaffer, supra; McGowan v. McGowan,* 248 Pa.Super. 41, 374 A.2d 1306 (1977).

In order to ensure that the best interests of the child will be served, the appellate court will engage in a com-

prehensive review of the record. *Scarlett v. Scarlett*, 257 Pa.Super. 468, 390 A.2d 1331 (1978); *In re Custody of Myers*, 242 Pa.Super. 225, 363 A.2d 1242 (1976). Thus, while it will defer to the lower court's findings of fact, the appellate court will not be bound by the deductions or the inferences made by the lower court from those facts, but will make an independent judgment based upon its own careful review of the evidence. *Sipe v. Shaffer, supra; Scarlett v. Scarlett, supra.* In conducting this review, the appellate court will look to whether all the pertinent facts and circumstances of the contesting parties have been fully explored and developed. See *Sipe v. Shaffer, supra; Gunter v. Gunter*, 240 Pa.Super. 382, 361 A.2d 307 (1976). It is the responsibility of the lower court to make a penetrating and comprehensive inquiry, and if necessary, to develop the record itself. See *Commonwealth ex rel. Cox v. Cox*, 255 Pa.Super. 508, 388 A.2d 1082 (1978). After fulfilling this responsibility to ensure a complete record, the court must file a comprehensive opinion containing its findings and conclusions. See *Valentino v. Valentino*, 259 Pa.Super. 395, 393 A.2d 885 (1978); *Gunter v. Gunter*, supra. Only with the benefit of a full record and full opinion can the appellate court hope to fulfill its responsibility of conducting its own careful review. *Valentino v. Valentino, supra.*

We have engaged in a comprehensive review of this voluminous record and have made our own independent judgment based upon our careful review of the evidence. In discharging this duty, we are satisfied that all relevant facts and circumstances have been fully explored and developed.

With these standards as our barometer, we have concluded that the lower court has made a penetrating and comprehensive inquiry in order to develop a complete record. In support thereof, the lower court has filed a comprehensive Opinion consisting of 67 pages, 193 Findings of Fact, a detailed review of the applicable law, and the reasoning behind its conclusions.

After the court interviewed the two children in-camera with counsel present, the appellant called a clinical psycholo-

gist with a Ph.D., Edwinna Sebest, who testified that she had occasion to treat, *test* and evaluate the children and concluded that it would be in the children's best interest to be in the general custody of the appellant.

At the next hearing, on July 17, the appellant testified; thereafter, the court-appointed clinical psychologist, Dr. Nutter, testified out of turn as a convenience to him; thereafter, appellee's sister, Susan Encke, took the stand. It must be noted at this time that Dr. Nutter's independent and unbiased recommendation was that it would be in the children's best interests to remain in the general custody of their mother, the appellee.

Later that day, appellee presented her case which consisted of the testimony of her regular babysitter, Gail Appenzellar, aged 29, wife and mother of 3; Stephen Coslett, clinical psychologist, who met with and examined the children on three separate occasions and then reviewed his findings with the appellee on a fourth occasion.

The following day, appellee completed her case by calling Richard B. Mason, a clinical social worker; Linda Guild Lake, the children's church nursery school teacher; Reverend William H. Harter, Pastor of the Presbyterian Church of Fall Springs in Chambersburg, Pennsylvania; appellee's father, J. Franklin Reed, aged 68 and retired (it was with him and his wife that the appellee and the children resided in Elk County for approximately a year as earlier discussed); Sarah Snowberger, instructor of the Chambersburg YMCA Aquatic Program in which the two children were involved; Joan Gindlesperger, a friend and the parties next-door neighbor in Chambersburg; and the appellee herself.

We concur with the lower court that the social, moral and spiritual environment created for the children by appellee is stable and beneficial to them; and that their best interests will be served by remaining in appellee's general custody.

The appellant attempted to reduce this custody proceeding to a "battle of the experts." The lower court analyzed the expert testimony presented by the parties, as well as the

testimony by its own court-appointed clinical psychologist. Although each expert's analysis of the individual children's psyches and social adjustment problems was generally consistent, each of the parties' experts differed as to which would make the better custodial parent. The lower court considered the experts' testimony in depth and concluded, notwithstanding the testimony of Dr. Sebest, that the children should remain in the general custody of the appellee. We concur.

Further, we are of the opinion that the lower court satisfied its obligation by comprehensively analyzing each of the children's needs as set forth in its lengthy Opinion. After conducting our own in-depth and careful review of the entire record, we similarly concur with the lower court that the children's present environment is stable and beneficial to them, and that it would not be in their best interests to alter the general custodial arrangement presently in existence.

Never losing sight of the need for a loving relationship between parent and a child, particularly in a single-parent situation, we concur that the emotional, spiritual, moral, intellectual and environmental life created by the appellee for the children, demands that she continue as their custodial parent at this time.

Order affirmed.