Commonwealth ex rel. Thomas, Appellant, *v.* Gillard.

Argued December 10, 1963. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Samuel Dashiell,* for appellant.

*Albert Konefsky,* for appellee.

OPINION BY WATKINS, J., March 17, 1964:

This is an appeal in a habeas corpus action from an order of the County Court of Philadelphia County awarding custody of the minor child, Renee Thomas, to Juanita Gillard, the mother of the child, the respondent-appellee.

The mother of the child, Juanita Gillard, was married to a James Brooks. While her divorce from Brooks was pending she married the petitioner, Donald Thomas, in July, 1956. The Brooks divorce was not granted until 1957. The child in question, Renee Thomas, was born of this union on September 14, 1958. Later Juanita and Donald were separated. Thomas obtained a Mexican divorce in May, 1961 and in July, 1961, he married Joyce Thomas, his present wife, who bore him another child. Thereafter he secured an annulment of his marriage to Juanita. Juanita married Prince Gillard, her present husband, on November 5, 1962.

The child was in the custody of her mother from the time of her birth on September 14, 1958, until April 15, 1961, when Thomas, under the pretext of taking the child on a visit in Philadelphia, carried the child away with him to the State of California without the consent of or notice to Juanita. After frantic efforts to locate the child she finally located Thomas in California and went to his home where, with her present husband Prince Gillard they forcibly seized the child but were stopped by the California police as they were boarding a plane for Philadelphia.

The child was then temporarily placed in an institution. On February 19, 1962, the court of Los Angeles County, California, awarded Juanita temporary custody of the child and entered an order of support for the child against Thomas. Later, on November 18, 1962, the court awarded full custody of the child to Thomas. On December 23, 1962, Juanita took the

child out of California and disregarding the order of the California court has since been residing in Philadelphia with her child.

We have repeatedly said that in determining custody problems our policy is to give great weight to the opinion of the hearing judge who has had the opportunity of seeing the parties and the children and listening to the testimony and only where we are constrained to decide that there has been a gross abuse of discretion will we interfere with the decision of the hearing judge.

In child custody cases the paramount question is the welfare of the children and all other considerations, including the "children of tender age doctrine" and even the rights of parents, are subordinate to the children's physical, intellectual, spiritual and emotional well being. *Com. ex rel. Bradley v. Bradley,* 188 Pa. Superior Ct. 108, 146 A. 2d 147 (1958) ; *Com. ex rel. Graham v. Graham,* 367 Pa. 553, 80 A. 2d 829 (1951). Here, the court below could find no compelling reason to indicate that the best interests and welfare of this child would be better served with the father but on the contrary, that the child's best interests, because of her tender years, would be served by remaining with her mother. "We have observed the parents as they testified before us and have searched the record; we can find no credible evidence that would serve as a compelling reason to deviate from the general rule hereinbefore stated to award custody of this child of tender years to her mother. What constitutes 'compelling reasons' depends largely upon the circumstances of any given case."

The mother had possession of this child from the date of birth, September 14, 1958, until April 15, 1961 when Thomas surreptiously took the child to California. She was with Thomas and his wife in California until November 15, 1961, a period of only seven

months. Between November, 1961 and February, 1962 the child was in. an institution until the mother recovered temporary custody from the California court in February, 1962 and retained it until the final order of the California court on November 18, 1962. The mother took the child from California on December 23, 1962. The husband, since the birth of the child, with the changing family relationships, only had custody of this child of tender years for a total period of approximately eight months. The mother had complete custody the rest of the time.

As to the question of the decree of custody in California, .the Pennsylvania Courts consider all orders fixing the custody of children as temporary in nature. *Com. ex rel. v. Daven,* 298 Pa. 416, 148 A. 524 (1930), where the Supreme Court said at page 419: "The cardinal consideration is ever the welfare of the child, which includes its physical, intellectual, moral and spiritual well being. To this the rights of parents and all other considerations are subordinate. Moreover, the controlling question is the welfare of the child at the time of the hearing before the court and not at some former time." And what this Court said in *Irizarry Appeal,* 195 Pa. Superior Ct. 104, at page 108, 169 A. 2d 307 (1961): "So it appears that the law in Pennsylvania is clear that full faith and credit must be given to the decree of custody of a sister state so far as it determines the status of the child at the time it was issued, but, if the Pennsylvania Court has jurisdiction, it may, because of the interest of the Commonwealth in the child, and because the welfare of the child is a paramount consideration, and because decrees of custody are temporary in nature and subject to modification by changing conditions, determine custody on the present facts and may even exercise its independent judgment on the same facts that determined the foreign state's order. *Com. ex rel. Schofield v. Schofield,* 173

Pa. Superior Ct. 631, 98 A. 2d 437 (1953) ; Com. ex rel. Graham v. Graham, 367 Pa. 553, 80 A. 2d 829 (1951) ; Com. ex rel. v. Daven, 298 Pa. 416, 148 A. 524 (1930) ; Com. ex rel. Scholtes v. Scholtes, 187 Pa. Superior Ct. 22, 142 A. 2d 345 (1958) ; Com. ex rel. Gregory v. Gregory, 188 Pa. Superior Ct. 350, 146 A. 2d 624 (1958) ; Com. ex rel. Swigart v. Swigart, 193 Pa. Superior Ct. 174, 163 A. 2d 716 (1960)."

Here, the original jurisdiction of this child was in Pennsylvania and only the abduction of the child by a ruse on the part of the father gave California jurisdiction. It is true that the mother personally appeared in California and subjected herself to the jurisdiction of that court, which makes this decision more difficult. Perhaps we are motivated by the doctrine of parens patriae but "The Commonwealth is vitally concerned with infants within its boundaries and an interested party in all matters affecting them." *Ciammaichella Appeal,* 369 Pa. 278, 287, 85 A. 2d 406 (1952).

Here this Commonwealth had a vital concern in the child and the intervention of an order of a sister state came into being only because of the abduction of the child from this jurisdiction. Although not condoning the method by which jurisdiction was returned to the Commonwealth by the mother, under all the circumstances of this case the court below was justified in looking at all the circumstances at the time of the hearing and in holding that the California decree was temporary in nature and the paramount consideration of the welfare of the child dictated his decision.

It is true that disregard of decrees of custody by sister states may lead to legalized abduction and it is also true that §§147 and 148 taken together, of the Restatement, Conflict of Laws, contemplate enforcement of the sister states' custody awards. However, the Restatement (2d), Conflict of Laws, §144 (Tent. Draft No. 4, 1957), says that "because the welfare of the

child is deemed to be the overriding consideration, probably the majority of courts have not felt themselves bound, even in the absence of changed conditions, to enforce without question foreign decrees of this type." See University of Pittsburgh Law Review, Vol. 23, Note 58, page 476.

Order affirmed.