Davis Appeal.

Submitted June 16, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Bruce A. Krain,* for appellant.

*Richard J. Harcar,* for appellee.

Opinion by Van der Voort, J., December 1, 1975:

The appellant, Patsy C. Davis, filed a Petition for a Writ of Habeas Corpus asking to obtain the custody of one of her minor children, Jamey Rachele Davis. Hearing was held on February 3 and 4, 1975. The Court on February 8, 1975 (the record indicates that the actual Order awarding custody was dated April 4, 1975 and filed the following day on April 5th) entered an Order denying the Writ of Habeas Corpus and awarding the custody of Jamey to Mr. and Mrs. Lewis Davis, the paternal grandparents. This appeal is taken from said Order.

The appellant was married to James Dale Davis. They had three children: Karen, aged 9; Jimmy Duane, aged 6; and Jamey Rachele, who was born on February 11, 1972 and had not yet reached her third birthday when the Petition was filed. The father, James Dale Davis, was killed in an automobile accident the month after Jamey was born. Approximately two weeks after James Dale Davis died, the appellant took up with one Joe Corrie who had left his wife and children and the two of them moved about four different times, but were at the time of the hearing living in Six Mile Run, Pennsylvania. Joe Corrie and the appellant have a child Jody who was aged one at the time of the hearing. Appellant's two older children presently reside with their maternal grandparents in the State of Texas. Shortly after Christmas in 1974, the appellant permitted Jamey to visit the respondents (Davises) for a few days. They found bruises and contusions over much of the child's body and took her to a hospital for an examination where there was evidence of multiple bruises and contusions, one being so severe as to cause blood to show up in her urine.

A thorough examination of the evidence indicates a general lack of concern of both appellant and Joe Corrie toward Jamey. The appellant concedes that she hit Jamey to "potty-train" her, and for other disciplinary reasons. She struck the child with a belt severely enough to leave

marks on her body. The appellant admitted slapping and spanking the child on many occasions and she testified that her paramour slapped the child often and on one occasion threw her up against the wall. She denied that she or her paramour seriously injured the child, ascribing the injuries found on her body to a fall down four porch steps. Joe Corrie made the little girl eat on the floor because he didn't want to look at her ugly face while he was eating. He struck her in her ear with his fist with such force that something in the ear popped like a gun and appellant had an awful time quieting Jamey after this blow. Whenever the child wet the bed, Joe Corrie would really "lick her".

The appellant claims that the child being only three years old should be awarded to her on the basis of the "tender years" doctrine. This doctrine holds that other factors being equal, a child of tender years should be with the mother. The Rule however, is not absolute. *Commonwealth ex rel. Bordlemay v. Bordlemay,* 201 Pa. Superior Ct. 435, 193 A.2d 845 (1963). The custody of a child of tender years may be taken from her mother where compelling reasons such as the child's physical, spiritual, emotional, intellectual and moral well being will be promoted by so doing. *Commonwealth ex rel. Thomas v. Gillard,* 203 Pa. Superior Ct. 95, 198 A.2d 377 (1964). The best interests and welfare of the child are paramount. *Commonwealth ex rel. Parikh v. Parikh,* 449 Pa. 105, 296 A.2d 625 (1972). In *Parikh,* the Court stated: "To award custody to the mother on the strength of the 'tender years' doctrine, under these circumstances, would be to lose sight of the fact that 'tender years' is merely the vehicle through which a decision respecting the infant's custodial well-being may be reached where factual considerations do not otherwise dictate a different result." 449 Pa. at 109, 296 A.2d at 627.

The paternal grandfather is fifty-six years of age. He is fervently devoted to the child. He has been dis-

abled from working as a result of an automobile accident, but is sufficiently able-bodied to spend much of his time with the child.

If the custody of the child were to be awarded to the mother, she would be largely under the domination of Joe Corrie who has no relationship to the child by either blood or marriage. By his conduct, he has indicated that he is unfeeling and unduly harsh with the child. He has shown little understanding of her.

We find that there are compelling reasons why the "tender years" doctrine should not be applied by awarding the custody of Jamey to her mother under these circumstances.

We find that the best interests and welfare of the child will be promoted by allowing her to remain with her paternal grandparents, Mr. and Mrs. Lewis C. Davis.

Order affirmed.